IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MAURICE DEMAN HALL | § | |
| VS. | § | CIVIL ACTION NO. 9:21cv249 |
| TINA M. METYOYER | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Maurice Deman Hall, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, brings this lawsuit pursuant to 42 U.S.C. § 1983 against Tina M. Metoyer, Hobie Credille, Darla T. Redwine, Shanda K. Lamb and Tony R. Mason. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants Credille, Redwine, Lamb and Mason have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff has filed a response. The motion is therefore ripe for consideration.

Factual Allegations

Plaintiff alleges that on June 21, 2021, he was in the gym at the Lewis Unit waiting to have his property searched and inventoried. He states defendant Metoyer, a sergeant, passed him several times without saying anything to him about his property.

When Plaintiff's property was being inventoried, an officer asked Defendant Metoyer a question about plaintiff's tennis shoes, which had been purchased in the commissary. The officer asked whether inmates were allowed to have two pairs of tennis shoes. Defendant Metoyer then began yelling loudly, falsely stating that inmates are not allowed to have two pairs of tennis shoes. She also began questioning why plaintiff's property was still inside his commissary bags.

At that point, defendant Metoyer made a loud announcement, telling the inmates to put all their property in the red crates. She also told plaintiff to go to the end of the line, stating that he was not ready to have his property inventoried and searched. Plaintiff states he made several attempts

to show defendant Metoyer the documents for his tennis shoes and tried to explain that he wanted to send the property in the commissary bags home to his family. However, defendant Metoyer did not calm down enough to listen to plaintiff.

Defendant Metoyer again told plaintiff to go to the end of the line. Plaintiff told her that if she wanted his property at the end of the line she should take it there herself. Defendant Moyer then gathered plaintiff's property so that she could inventory it herself. A property officer assisted her.

After she searched plaintiff's property, defendant Metoyer called Sergeant Logan and told him to escort plaintiff back to his cell. Plaintiff states she did this because she did not want plaintiff to see her vandalizing his property. While he was being escorted to his cell, plaintiff asked Sergeant Logan to call defendant Credille, a lieutenant, over. After plaintiff explained what had happened, defendant Credille stated he was going to talk to defendant Metoyer. Plaintiff was then taken back to his cell.

Shortly after he returned to his cell, defendant Credille sent him a message via an inmate named Jeremy Brass. Defendant Credille had told Mr. Brass that defendant Metoyer said she was going to use pepper spray on plaintiff when she brought his property back.

Thereafter, defendant Metoyer and an inmate named Craig brought plaintiff some of his property. They were accompanied by Officer Dominque Woods, who had just come on duty. Officer Woods signaled for plaintiff's cell door to be opened while Mr. Craig carried the property upstairs to plaintiff's cell. Defendant Metoyer then came up to close plaintiff's cell door. Plaintiff states he could clearly see that all his property was not there.

Plaintiff asserts that as his property was blocking the doorway, defendant Metoyer could not close the door to his cell. She began kicking the property to get it inside the cell. As defendant Metoyer was doing this, Plaintiff asked her for the confiscation documents for the rest of his property. He stated he would not accept the return of some of his property without receiving confiscation papers for the remainder.

Plaintiff told defendant Metoyer he was not going to stay in the cell without his fans and was going to leave the cell. As he tried to do this, defendant Metoyer intentionally closed the door on him in an attempt to stop him from leaving the cell. When plaintiff broke free, defendant Metoyer used pepper spray on the back of his head and his back.

Plaintiff then began to walk down the stairs to the shower so he could rinse off the pepper spray. While he was on his way, he was apprehended by defendant Lamb, a lieutenant, defendant Redwine, a sergeant and Sergeant Amy Courts. Defendant Redwine placed him in handcuffs without telling him why. Sergeant Courts videotaped what was happening as defendant Lamb supervised.

Plaintiff was then taken to a small cell containing a shower. He was forced to decontaminate with only a piece of green soap the size of a domino and hot water. Plaintiff asserts the hot water only made things worse. Plaintiff states that as a result of being sprayed, he thought he was going to die from an asthma attack. The supervising officer and other inmates saw that plaintiff was coughing and choking.

Plaintiff asked that defendant Lamb be called. When she appeared, plaintiff told her he could not breathe, suffered from asthma and needed to go to the infirmary. When defendant Lamb asked plaintiff if he had an inhaler, he told her it was in his property. He again stated that he needed to go to the infirmary. Defendant Lamb then yelled at plaintiff, told him there was no one in the infirmary, and left him without providing any assistance.

Plaintiff states he remained in the decontamination cell for six hours without anywhere to sit. Sergeant Courts then took him to the infirmary where he was partially evaluated by the medical staff. Plaintiff states his skin and head burned and was irritated for five days following the assault.

Plaintiff states he was subsequently placed in pre-hearing detention. He received some of his property and remained there for 12 days. On June 15, he was given a copy of a disciplinary report by Officer Tabatha Cooper. The report charged him with assaulting defendant Metoyer.

Several days later, plaintiff appeared at a disciplinary hearing where defendant Mason, a captain, presided. Plaintiff tried to explain that his rights had been violated. Defendant Mason acted like he had no idea what plaintiff was talking about and coerced him into participating in the hearing. Plaintiff states that despite defendant Metoyer's inconsistent testimony, defendant Mason found him guilty of the offense with which he was charged.

## Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), the district court has the authority to dismiss an action for lack of subject matter jurisdiction based on: (1) the complaint alone, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 654 F.2d 404, 413 (5th Cir. 1981). The court generally can decide disputed issues of material fact in order to determine whether or not it has jurisdiction. *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (3rd Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint if it fails to state a claim upon which relief may be granted. A complaint does not need detailed factual allegations, but a plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555. A plaintiff must plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

*Eleventh Amendment Immunity*

"The Eleventh Amendment prohibits a private citizen from bring suit against a state in federal court unless the state consents." *Daigle v. Gulf States Utilities Company, Local Union Number 2286*, 794 F.2d 974, 980 (5th Cir. 1986). Eleventh Amendment immunity extends to suits

for money damages against a state official in his or her official capacity. *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Services*, 532 U.S. 598, 609 (2001). Federal claims against state officials in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).

Based on the authorities cited above, the defendants are entitled to immunity under the Eleventh Amendment for any claim against them in their official capacities for money damages. The court therefore lacks subject-matter jurisdiction over those claims.

*Claim Against Defendant Credille*

Plaintiff faults defendant Credille for failing to take disciplinary action to curb what he describes as defendant Metoyer's known pattern of physical abuse of inmates. As a result, plaintiff is alleging defendant Credille failed to properly supervise defendant Metoyer.

While, a supervisory official such as defendant Credille may not be held responsible for the actions of subordinates, they may be liable if their own action or inaction, including the failure to properly supervise subordinates, amounts to deliberate indifference and is the proximate cause of a constitutional violation. *Cantu v. Rocha*, 77 F.3d 795, 807 (5th Cir. 1996). In this context, deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

Plaintiff states in conclusory fashion that defendant Metoyer had a known pattern of physically abusing inmates. However, he has failed to state facts describing any such incident. Nor has he indicated the amount of times defendant Metoyer has physically abused inmates. Finally, plaintiff has not stated facts indicating defendant Credille was aware of any past physical abuse. Plaintiff has therefore failed to state facts showing that defendant Credille's alleged failure to supervise rose to the level of egregious intentional conduct. The claim against him should be dismissed for failure to state a claim upon which relief may be granted.

*Claim Against Defendants Redwine and Lamb*

To establish a violation of the Eighth Amendment to the Constitution based on the denial of medical care, a prisoner must allege a defendant was deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97. 103-04 (1976). A defendant is deliberately indifferent to serious medical needs only if he knows an inmate faces a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. at 825, 847 (1994); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Negligence or neglect does not rise to the level of a constitutional violation. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). In *Domino v. Texas Department of Criminal Justice*, the United States Court of Appeals for the Fifth Circuit described the deliberate indifference standard as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a clam for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs.

239 F.3d 752, 756 (5th Cir. 2001).

A delay in receiving treatment can constitute a constitutional violation, but only if there is deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006).

Plaintiff asserts defendants Redwine and Lamb were deliberately indifferent to his serious medical needs because they did not provide sufficient supplies to permit him to decontaminate himself. He also complains that defendant Lamb failed to immediately take him to the infirmary when he told her he could not breathe and suffered from asthma.

Plaintiff does not indicate he informed either of these two defendants that the supplies for decontamination he had were inadequate. As a result, plaintiff has not shown either of these two defendants were aware he was subject to a substantial risk of serious harm as a result of having inadequate supplies.

Plaintiff also faults defendant Lamb for not taking him to the infirmary sooner. Plaintiff indicates there was a six hour delay in taking him for medical attention. While such a delay might appear longer than necessary, plaintiff does not state his condition became worse while he was waiting or that the delay changed the treatment that was ultimately provided. As a result, this aspect of plaintiff's claim also fails to state a claim upon which relief may be granted.[1]

Plaintiff's allegations regarding his medical claim fail to satisfy the applicable legal standard. The allegations therefore fail to state a claim upon which relief may be granted.

*Claim Against Defendant Mason*

Plaintiff alleges defendant Mason denied him due process of law in connection with his disciplinary proceeding. However, for the reasons stated below, plaintiff's denial of due process claim fails to state a claim upon which relief may be granted.

In *Sandin v. Conner*, 515 U.S. 472, 478 (1985), the Supreme Court disapproved of previous cases which shifted the focus of the liberty interest inquiry to one based on the language of the particular regulation rather than one based on the deprivation experienced by a prisoner. The Court concluded that such an inquiry "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id*. The Court held that liberty interests protected by the Due Process Clause would generally be limited to freedom from restraints which impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id*. at 483-84 (citations omitted).

As a general rule, only sanctions which either result in loss of good conduct time credits for inmates who are eligible for release on mandatory supervision or directly and adversely affect release on mandatory supervision will impose upon a liberty interest. *Orellana v. Kyle*, 65 F.3d 29, 31-33 (5th Cir. 1995) ("Although *Sandin* cites with approval cases in which it was held that state

---

[1] Plaintiff experienced a delay of a similar length before being taken to the infirmary for a more thorough decontamination. Again, however, plaintiff does not state the delay caused his condition to become worse. This also prevents the conclusion that plaintiff's allegations regarding inadequate contamination supplies state a claim upon which relief may be granted.

law could created a constitutional liberty interest in good-time credits, or release on parole, it is difficult to see that any other deprivations in the prison context . . . will henceforth qualify for constitutional liberty status.").

Plaintiff does not state he lost previously earned good conduct time credits as a result of the disciplinary proceeding. For the reasons set forth above, the punishment imposed as a result of the disciplinary proceeding therefore did not implicate a protected liberty interest. As a result, plaintiff was not entitled to due process of law before receiving the punishment. The claim against defendant Mason should be dismissed for failure to state a claim upon which relief may be granted.

## Recommendation

The motion to dismiss should be granted.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

SIGNED this 17th day of January, 2023.

_____
Zack Hawthorn
United States Magistrate Judge